UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

    v.

                                  CRIMINAL NO. 4:19-cr-8

ANTHONY MICHAEL LAPORTE,

       Defendant.

## OPINION

This matter comes before the court on Defendant's pro se "Motion For Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)" ("Motion"), filed on June 20, 2024. ECF No. 60. The United States opposes the Motion, ECF No. 65, and the court addresses the Motion and opposing arguments herein. For the reasons explained below, Defendant's Motion is **DENIED**.

### I. PROCEDURAL HISTORY

On February 11, 2019, a federal grand jury returned an indictment charging Defendant with nine counts related to Defendant's receipt of child pornography. ECF No. 1. Defendant pled guilty to Count Four of the indictment, and the United States agreed to dismiss the remaining counts at sentencing. ECF Nos. 15 (Plea Agreement); 29 at 5 (Sentencing Hearing). Count Four charged Defendant with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2). See ECF No. 15 at 1.

The advisory guideline range for Defendant's term of imprisonment was 97 to 121 months, with a statutory minimum term

of 60 months imprisonment. See ECF No. 22 at 15 (Presentence Investigation Report). After considering the relevant 18 U.S.C. § 3553(a) factors at Defendant's sentencing hearing on October 1, 2019, the court imposed a within-guideline sentence of 108 months. See ECF No. 29 at 1; see also ECF No. 35 at 15-21 (Sentencing Transcript).

Defendant's instant Motion, filed pro se, was docketed on June 20, 2024. ECF No. 60. On October 4, 2024, the United States filed a Response in Opposition. ECF No. 65 ("Response"). Defendant filed a Reply on November 1, 2024. ECF No. 69. This matter is now ripe for judicial decision.

## II. MOTION FOR COMPASSIONATE RELEASE

### A. Exhaustion of Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the court may modify a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." Before the court may consider such motion, however, the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

The Fourth Circuit has clarified that defendants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of

their initial request to file a motion in the district court,"
even if the warden has already responded to their request. United
States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) (collecting
cases). The court further clarified that the exhaustion
requirement "is a non-jurisdictional claim-processing rule," and
therefore "may be waived or forfeited." Id. at 130.

In its Response, the United States concedes that Defendant
has exhausted his administrative remedies. See ECF No. 65 at 4.
Accordingly, Defendant is deemed to have satisfied the exhaustion
requirement under 18 U.S.C. § 3582(c)(1)(A).

### B. Merits

As a general matter, a sentencing court "may not modify a
term of imprisonment once it has been imposed." 18 U.S.C.
§ 3582(c). However, Congress created an exception to that general
rule allowing the court to reduce a defendant's sentence when
"extraordinary and compelling reasons warrant such a reduction."
18 U.S.C. § 3582(c)(1)(A)(i).

Evaluating a motion for compassionate release under
§ 3582(c)(1)(A)(i) is a two-step inquiry. The court must first
determine: "(1) whether extraordinary and compelling reasons
warrant such a reduction; and (2) that such a reduction is
consistent with applicable policy statements issued by the [United
States] Sentencing Commission." United States v. Malone, 57 F.4th
167, 173 (4th Cir. 2023). If so, the court may then "grant the

3

motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release." Id. The Fourth Circuit has reaffirmed the importance of performing the analysis in two discrete steps. In United States v. Osman, the court held that the district court had "impermissibly collapsed the threshold 'extraordinary and compelling reasons' inquiry into its consideration of the 18 U.S.C. § 3553(a) factors." 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024). Accordingly, Defendant is only entitled to compassionate release if he shows both (1) an extraordinary and compelling reason, and (2) that the § 3553(a) factors favor his release.[1] Id.

### 1. Extraordinary and Compelling Reasons

In determining whether Defendant has presented an extraordinary and compelling reason, the court looks to those reasons outlined in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13(b) (Policy Statement). The court's findings must be "consistent with" the Policy Statement. 18 U.S.C. § 3582(c)(1)(A). Accordingly, Defendant has the burden of showing

---

[1] The court in Osman clarified that the two steps need not be distinct in content, but merely in application. The court noted that "a court is entitled to consider certain facts during the first step of the compassionate release analysis—i.e., extraordinary and compelling reasons—and then again consider those facts in weighing the § 3553(a) factors at the second step." Osman, 2024 WL 3633573, at *4 n.7. "The court should not, however, conflate the separate steps. It should address the inquiries individually and sequentially." Id.

an extraordinary and compelling reason under the framework established in the Policy Statement. See <u>United State v. Hart</u>, 2024 WL 3974230, at *2 (E.D. Va. Aug. 28, 2024) (Trenga, J.) (finding that because § 1B1.13(b) is a policy statement, "a defendant seeking a modification of his or her sentence must identify one or more of the enumerated extraordinary and compelling reasons as a basis for release"); <u>see also</u> <u>United States v. Locust</u>, 591 F. Supp. 3d 12, 18 (E.D. Va. 2022) (Smith, J.) (finding that the defendant bears the burden of showing an "extraordinary and compelling reason" for release).

### a. Rehabilitation

Defendant argues that his efforts at rehabilitation while incarcerated are an extraordinary and compelling reason for relief. <u>See</u> ECF No. 60 at 3-5. In support of this notion, Defendant offers evidence that he completed various programming while incarcerated, including Alcoholics/Narcotics Anonymous and Soldier On, a program for incarcerated veterans. <u>See</u> ECF Nos. 69 at 2; 69-2 at 2-3. Defendant has completed other classes while incarcerated, including Culinary Arts, Drawing, Greeting Cards, Beading, and the Work Keys program. <u>See</u> ECF No. 65-2 at 1. Additionally, Defendant cites his near-perfect disciplinary record[2] as evidence of his rehabilitation. <u>See</u> ECF No. 60 at 16.

---

[2] Defendant's only disciplinary infraction occurred on October 6, 2020, when he was found in possession of an unauthorized

The court first notes that the policy statement mandates that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but that "rehabilitation . . . may be considered in combination with other circumstances[.]" § 1B1.13(d). In evaluating Defendant's claim of rehabilitation, the court credits Defendant for his completion of various programs while incarcerated, as well as his disciplinary record, but nonetheless finds that these facts do not weigh heavily in favor of compassionate release. See United States v. Burale, 2022 WL 1439663, at *6-7 (E.D. Va. May 6, 2022) (Smith, J.) (finding defendant satisfied baseline expectations by completing twenty (20) educational courses, having a job while incarcerated, completing a drug education program, and having no disciplinary infractions for several months). While commendable, these are merely "'the things that prisoners are supposed to do' while incarcerated," they are not extraordinary and compelling. Id. (citing United States v. Logan, 532 F. Supp. 3d 725, 735 (D. Minn. 2021)).

What is more revealing is what Defendant has not done. At sentencing, the court directed that Defendant "be placed in the

---

item. See ECF No. 65 at 8. Defendant claims he merely "possess[ed] too many postage stamps." See ECF No. 60 at 16. The government does not rebut Defendant's characterization of the disciplinary infraction. Accordingly, the court will assume without deciding that the infraction was relatively minor, as described by Defendant.

intensive sex offender treatment program at the Federal Medical
Center, Devens, Massachusetts, or, if not available, at a federal
facility that offers an equivalent intensive sex offender
treatment program." ECF No. 29 at 1. This has not occurred, and
Defendant has received no sex offender-specific treatment. See ECF
Nos. 60 at 20; 65 at 6-7. Defendant places the blame on the Bureau
of Prisons ("BOP"), stating, "to date the Bureau of Prisons has
refused to provide the Defendant with any sex offender treatment."
ECF No. 60 at 20. Defendant presents no evidence for this claim,
and creates the mistaken impression that it is the government's
sole burden to provide treatment, with no responsibility for him
to seek it out. BOP Program Statement 5324.10 (Sex Offender
Programs) states:

> Inmates may self-refer to sex offender treatment
> services by submitting an Inmate Request to Staff
> (BP-A0148) to the Chief Psychologist at the inmate's
> institution. Participants may enroll in the sex offender
> treatment program at any time during the course of their
> sentence, provided they have sufficient time to complete
> the program.[3]

---

[3] Defendant still has time to complete a Sex Offender
Treatment Program ("SOTP"). To be eligible for the BOP's
Non-Residential Sex Offender Treatment Program ("SOTP-RN"), the
inmate must have no less than 21 months to his/her projected
release date. See BOP Program Statement 5324.10 at 16. For the
BOP's Residential Sex-Offender Treatment Program ("SOTP-R"), the
inmate must have no less than 27 months to his/her projected
release date. See id. Defendant's projected release date is June 1,
2027, roughly 30 months from the time of this Opinion, giving him
sufficient time to complete either program. See
https://www.bop.gov/inmateloc/.

Id. at 16 (emphasis added). Defendant presents no evidence that he ever requested sex offender treatment. As this court has noted, failure to avail oneself to the BOP's sex offender treatment programs "does not reflect the mindset of a person who has recognized his mistakes and accepted responsibility for his actions and the need to seek treatment." United States v. Shimek, 2023 WL 2479609, at *7 (E.D. Va. Mar. 13, 2023) (Young, J.). Rather, "it suggests the opposite, and does nothing to convince the Court that Defendant would not pose a danger to the community if released." Id. As Defendant himself notes, in cases like his, "the only truly effective deterrence is treatment." ECF No. 60 at 19. Defendant's failure to seek out such treatment gives the court strong misgivings about his commitment to rehabilitation. Accordingly, the court cannot find that Defendant has presented persuasive evidence of his rehabilitation, much less evidence which is extraordinary and compelling.

**b. Harshness of Incarceration During the COVID-19 Pandemic**

Defendant argues that his incarceration during the COVID-19 pandemic at FCI Danbury constitutes an extraordinary and compelling reason for his release. See ECF No. 60 at 6-10. While this court acknowledges that the conditions at FCI Danbury may have been less than ideal during COVID-19, as was the case across the country at prison facilities, "harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without

more, sufficiently 'extraordinary and compelling' to warrant
compassionate release." United States v. Hall, 2022 WL 2105975,
at *3 (D. Md. June 10, 2022) (quoting United States v. Hatcher,
2021 WL 1535310, at *3-4 (S.D.N.Y. Apr. 19, 2021)); see United
States v. McCoy, 2024 WL 1672363, at *5 (D. Conn. Apr. 18, 2024)
(finding that conditions at FCI Danbury during the COVID-19
pandemic, among other issues at the facility, did not constitute
an extraordinary and compelling reason for release). Conditions
that "generally apply to every prisoner within a given facility
and are neither unique to [the defendant] nor extraordinary in the
broader context of the global pandemic" do not warrant
compassionate release. United States v. Fuentes, 2022 WL 3581392,
at *7 (E.D. Va. Aug. 19, 2022) (Gibney, J.). This principle
recognizes the reality that the challenges, anxiety, and confusion
occasioned by the COVID-19 pandemic were borne by all. See United
States v. Murry, 538 F. Supp. 3d 615, 619 n.2 (E.D. Va. 2021)
(Smith, J.) (internal citation omitted) ("All inmates, as well as
non-incarcerated individuals, have endured isolation, the fear of
contracting the virus, limits on movement and programming, and
restrictive protocols due to the pandemic.").

Indeed, "[i]f challenging the conditions of confinement
caused by the pandemic warranted a sentence reduction here,
essentially every inmate who has been in BOP custody at any time
since March 2020 would be entitled to a sentence reduction."

Taylor v. United States, 2023 WL 1475072, at *3 (E.D. Va. Feb. 2, 2023) (Jackson, J.). Nothing in Defendant's motion shows how the conditions at FCI Danbury were unique to him. See Crank v. United States, 2023 WL 6368966, at *4 (E.D. Va. Sept. 28, 2023) (Jackson, J.) (internal citation omitted) ("Although the Court recognizes, and in no way minimizes the harsh realities incarcerated individuals have faced during the pandemic, Petitioner does not mention any potential harsher conditions of confinement that are unique to him for purposes of compassionate release."); Fuentes, 2022 WL 3581392, at *9 (finding that defendant's conditions of incarceration during the COVID-19 pandemic are not extraordinary and compelling because defendant "fails to provide evidence to . . . demonstrate why such conditions are exceptional as to him"). Accordingly, the court cannot find that Defendant's conditions of incarceration at FCI Danbury during the COVID-19 pandemic constitute an extraordinary and compelling reason for release, then, or now that the height of the COVID-19 pandemic is over.

### c. Sentencing Disparity

Defendant also asserts there is a sentencing disparity between himself and defendants convicted of similar crimes. While no provision in the policy statement covers this specific argument, courts have found that such a disparity may constitute a sentence of "sheer and unusual length" and qualify as an extraordinary and

compelling reason under § 1B1.13(b)(5) (the "catch-all provision"). See e.g., United States v. Brown, 78 F.4th 122, 131 (4th Cir. 2023) (considering the disparity between the defendant's sentence and codefendants' sentences in considering the "sheer and unusual length" of defendant's sentence); United States v. Johnson, 2023 WL 5049267, at *10 (E.D. Va. Aug. 8, 2023) (Trenga, J.) (similar).

However, to show that a sentencing disparity is unwarranted, the defendant must show that he is similarly situated to the other defendants, even when those defendants were convicted under the same statutory provision. See United States v. Smith, 836 F. App'x 149, 153 (4th Cir. 2020) ("[T]he comparators to whom [defendant] points were not similarly situated. Thus, sentencing disparities here are expected and appropriate."); United States v. Millner, 2023 WL 2457094, at *2 (D. Md. Mar. 10, 2023) (denying compassionate release motion where codefendants who received shorter sentences were not similarly situated to the defendant). This showing goes to the heart of sentencing. Simply comparing two defendants' sentences unmoored from the underlying facts is "treacherous because each sentencing proceeding is inescapably individualized[.]" United States v. Rivera-Santana, 668 F.3d 95, 105 (4th Cir. 2012); see United States v. Sullivan, 756 F. App'x 272, 282 (4th Cir. 2018) (internal citation and quotation omitted) ("A reviewing court should not isolate a possible sentencing

disparity to the exclusion" of other relevant factors). "Such
individualized treatment is necessary 'to consider every convicted
person as an individual and every case as a unique study in the
human failings that sometimes mitigate, sometimes magnify, the
crime and the punishment to ensue.'" United States v. Carter, 564
F.3d 325, 328 (4th Cir. 2009) (quoting Gall v. United States, 552
U.S. 38, 52 (2007)).

The United States Sentencing Guidelines, and the statutory
sentencing factors under 18 U.S.C. § 3553(a), are helpful in
identifying similarly situated defendants. See generally
§ 3553(a)(6) (courts have a duty to "avoid unwarranted sentence
disparities among defendants with similar records who have been
found guilty of similar conduct"). To establish that he has been
subjected to unwarranted disparity then, a defendant must, at the
very minimum, show that a defendant with a similar record who has
been found guilty of similar conduct received a lesser sentence
for that conduct. Cf. United States v. Reyes, 207 F. App'x 327,
329 (4th Cir. 2006) ("[Defendant] and his codefendant are not
similarly situated, and the disparity in their sentences resulted
from [defendant's] extensive criminal record and his guilty plea
to the firearm charge.").

In two cases Defendant provides details as to the crimes of
other defendants. See ECF No. 60 at 11. Defendant notes that in
United States V. Schmutzler, the defendant was a teacher who

received between four and eight million images of child pornography, 1,424 of which he had photoshopped to feature the faces of his current students. 602 F. App'x 871, 872-73 (3d Cir. 2015). The defendant in Schmutzler was sentenced to 108 months incarceration, the same as Defendant. See id. at 873. Defendant also cites United States v. Goode, in which the Defendant received over one million images of child pornography, and was sentenced to 84 months incarceration. 2020 U.S. Dist. LEXIS 111596, at *1, 7 (S.D. Fla. June 23, 2022).

Defendant's comparison fails for several reasons. The court first notes that merely counting the number of images a defendant received does not fully capture the nature of a defendant's conduct. In this case, the child pornography was particularly disturbing, the worst of which involved a sex act performed on an infant. See ECF No. 22 at 6. While Defendant notes the unsettling details of Schmutzler, Defendant does not explain how the circumstances of his case are any less heinous. Additionally, Defendant's actions went beyond passively viewing the images. Defendant sent texts to a female complainant expressing a desire to engage in sex acts with children. See ECF No. 22 at 4. As the court noted during sentencing: "This is a step further than just viewing. This is verbalization of what you want to see and what you want done." ECF No. 35 at 18. Given these facts, the court

cannot find that Defendant has carried his burden to show that these defendants engaged in "similar conduct."

Moreover, Defendant has failed to show that the other defendants had a "similar record." Defendant cites thirteen (13) cases for comparison, but gives no details as to any of the defendants' records. See ECF No. 60 at 11-12. Without this information, the court is unable to make an informed comparison, and cannot find that there is an unwarranted sentencing disparity. See United States v. Abu Ali, 528 F.3d 210, 267 (4th Cir. 2008) (comparisons with other defendants' sentences are unavailing if those defendants have dissimilar circumstances and histories).

These same principles apply to the three cases Defendant cites in which the defendants were convicted of distributing child pornography, a more severe crime, but nonetheless received shorter sentences than Defendant. See ECF No. 60 at 13. Defendant provides no details as to the nature of the offenses, nor of each defendant's background and record. For these reasons, the court cannot make an informed comparison, and these cases do not show there is an unwarranted sentencing disparity.

Accordingly, Defendant has failed to show that he is similarly situated to the other defendants and thus cannot show that any sentencing disparity which may exist is unwarranted. Moreover, none of Defendant's arguments, either individually or taken together, constitute an extraordinary and compelling reason for

14

granting compassionate release. Accordingly, Defendant has failed to show an extraordinary and compelling reason. For this reason, his Motion for Compassionate Release is **DENIED**.

### 2. Section 3553(A) Factors

Since Defendant has not provided an extraordinary and compelling reason justifying relief, the court need not reach the 18 U.S.C. § 3553(a) sentencing factors. See United States v. Smith, 2024 WL 126994, at *4 n.9 (W.D. Va. Jan. 11, 2024) (declining to address the § 3553(a) factors where the defendant failed to show an extraordinary and compelling reason (citing Malone, 57 F.4th at 174)). However, the court elects to briefly address the § 3553(a) factors to underscore why relief would be inappropriate.[4]

The court first considers the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). It goes without saying that the nature and circumstances of the offense—receiving child pornography—are very serious. The details of Defendant's conduct only reinforce this fact. As this court noted during sentencing "[a]ny child

---

[4] For the sake of avoiding redundancy, the court notes that for the reasons stated in Section II.B.1.c. (Sentencing Disparity), Defendant's current sentence does not run afoul of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); see discussion Section II.B.1.c. at 10-14.

pornography is horrible," but Defendant's actions were "just disgusting," as he was "reaching out and interested in acts with infants and babies[.]" ECF No. 35 at 16. In short, Defendant committed a horrific crime, the severity of which has not diminished since his sentencing.[5]

Defendant's history and characteristics—including his lack of criminal history, military service, and steady employment—do little to mitigate the seriousness of his offense. The court already took these factors into account during sentencing, noting that Defendant's overall clean record is "in [his] favor . . . but it's not out of the norm for individuals convicted of child pornography offenses." Id. In assessing his characteristics, Defendant asks the court to "consider[] the Defendant as he appears today, 'not on the date of his offense or the date of his conviction.'" United States v. Wyche, 2023 LEXIS 3620, at *20 (D.D.C. Jan 9, 2023) (quoting Conception v. United States, 597 U.S. 481, 486 (2022)). The court does so, but is unable to find that Defendant has taken the requisite steps to show he is changed person. Despite the court's insistence at sentencing that Defendant receive treatment, Defendant has not availed himself to sex-offender specific resources within the BOP. See discussion

---

[5] For these same reasons, a reduction in sentence would fail "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" § 3553(a)(2)(A).

*supra* Section II.B.1.a. at 7-8. This factors heavily into the court's conclusion that Defendant's "characteristics" have not meaningfully changed since sentencing, and that a sentence reduction is unwarranted.

The court next considers the reasons stated under § 3553(a)(2). These include the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

*Id.* Here too, Defendant's failure to seek sex-offender treatment augurs strongly against a sentence reduction. Without treatment, Defendant has not shown that he no longer possesses the tendencies which led him to this point, and thus has not shown that reducing his sentence would "protect the public from further crimes of the defendant." § 3553(a)(2)(C). Furthermore, reducing Defendant's sentence would prevent him from receiving sex-offender treatment through the BOP. This conflicts with the court's duty to ensure Defendant's sentence allows him to receive "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" § 3553(a)(2)(D). For this same reason, a reduction would also not "afford adequate deterrence,"

17

as Defendant himself notes: "the only truly effective deterrence is treatment." ECF No. 60 at 19; § 3553(a)(2)(B).

Considering the foregoing facts, "the kinds of sentences available," § 3553(a)(3), and "the kinds of sentence and the sentencing range established" for Defendant's offense, § 3553(a)(4), the court's original sentence of 108 months, approximately the midpoint of Defendant's guideline range, remains "sufficient, but not greater than necessary," to achieve the aims of 18 U.S.C. § 3553(a).

### C. CONCLUSION

Defendant has not shown legal or factual justification for compassionate release, nor "extraordinary or compelling" circumstances to so justify. Accordingly, for the foregoing reasons, Defendant's Motion for Compassionate Release, ECF No. 60, is **DENIED**. The Judgment entered on October 1, 2019, ECF No. 31, remains in full force and effect.

The Clerk is **DIRECTED** to forward a copy of this Opinion to Defendant, the United States Attorney at Newport News, and the Bureau of Prisons.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

November 15, 2024

18